<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| TAMMIE M.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br>ADMINISTRATION,<br><br>　　　　　　Defendant. | Civil Action No. 22-01625 (ZNQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff Tammie M.'s ("Plaintiff")[1] appeal of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her applications for disability insurance benefits and Supplemental Security Income ("SSI"). (ECF No. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ"), as adopted by the Commissioner, is **AFFIRMED**.

**I.　　BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, born in April 1972, was 46 years old on her alleged disability onset date of June 1, 2018, the day on which she underwent nasal surgery. (*See* Administrative Record ("A.R.") 233, 314–17, 1085.) Plaintiff filed a Title II application for a period of disability and disability insurance

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

benefits on October 10, 2019, alleging disability due to, among other things, "empty nose syndrome" and depression, and thereafter filed an application for SSI on April 14, 2020. (A.R. 314–17, 342.) The Title II application was denied initially on February 14, 2020, and the concurrent claims were denied upon reconsideration on July 10, 2020. (A.R. 262–66, 268–73.) Plaintiff then filed a written request for a hearing before an ALJ, which was held via teleconference on December 11, 2020. (A.R. 194–223.) On January 14, 2021, the ALJ determined that Plaintiff was not disabled at any time from Plaintiff's alleged disability onset date through the date of decision. (A.R. 71–94.) Following the ALJ's decision, Plaintiff sought review by the Appeals Council, which was denied on January 27, 2022. (A.R. 1–7.) Plaintiff now appeals the final agency decision under 42 U.S.C. § 405(g).

### A.    Relevant Medical Evidence

Plaintiff underwent surgery for chronic sinusitis and nasal congestion on June 1, 2018. (A.R. 1085–87.) Shortly thereafter, Plaintiff followed up with her primary care office and stated that her nose felt congested and that she suspected empty nose syndrome. (A.R. 619.) Treatment notes indicate that Plaintiff's maxillary sinus was tender to percussion and that she was advised to follow up with an ear, nose, and throat ("ENT") doctor for evaluation. (*Id.*)

In August 2018, Plaintiff returned to her primary care office and was examined by Folarin D. Tuboku-Metzger, M.D. (A.R. 617.) Plaintiff explained that she was experiencing chronic fatigue, depression, and breathing problems since her surgery. (*Id.*) Plaintiff stated she saw an ENT doctor who advised her that it could take up to one year to see full results from the surgery and that no further intervention was warranted. (*Id.*) Dr. Tuboku-Metzger's examination revealed no significant abnormalities. (*Id.*) In March 2019, Plaintiff continued to report chronic fatigue and joint pain, which she believed could be due to fibromyalgia. (A.R. 612.) The examining

physician's assistant noted no significant abnormalities. (*Id.*) On March 29, 2019, sinus imagining indicated mild right maxillary sinus disease. (A.R. 637.)

Plaintiff presented to Martinsville Institute for Rheumatic and Autoimmune Diseases on May 7, 2019, where she was evaluated for joint pain, fatigue, and brain fog by Sheetal Patel V, M.D. (A.R. 484.) Dr. Patel's examination revealed no abnormalities. (A.R. 486.) In June 2019, Dr. Patel assessed Plaintiff's blood work and radiographic imaging, finding no evidence of any underlying inflammatory arthropathy or connective tissue disease. (A.R. 494.) Otherwise, Dr. Patel noted that Plaintiff's spine x-rays revealed possible degenerative join disease and that her blood work showed only unremarkable and minimally elevated inflammatory markers. (*Id.*)

Plaintiff continued to follow up with her primary care office, reporting fatigue, fibromyalgia, and depression. (A.R. 603–08.) An MRI from September 2019 showed clear sinuses. (A.R. 635.) However, in November 2019, Plaintiff told Dr. Tuboku-Metzger that she disagreed with the radiologist's interpretation of the MRI given her severe sinus symptoms. (A.R. 603.) Dr. Tuboku-Metzger's treatment notes indicated that Plaintiff's frontal sinus and maxillary sinus were tender to percussion but noted no significant abnormalities. (*Id.*)

After the MRI, Plaintiff also followed up with neurologists at the JFK Neuroscience Institute in December 2019. (A.R. 648.) Upon neurological examination, Plaintiff exhibited normal motor function, coordination, reflexes, gait, memory, and basic recall. (A.R. 650.) Treatment notes state that Plaintiff "was alert and oriented to person, place, time, and situation with fluent speech." (*Id.*)

In February 2020, Plaintiff presented to Oren Friedman, M.D. for evaluation of her sinuses. (A.R. 1098.) Plaintiff explained that she feels she is suffocating and that her nose did not function

3

properly. (*Id.*) Dr. Friedman performed a nasal endoscopy, which showed changes to the turbinates in Plaintiff's nose due to the surgery but no significant abnormal findings. (A.R. 1099.)

In a September 15, 2020 statement, Subinoy Das, M.D., of the U.S. Institute for Advanced Sinus Care and Research stated that he had conducted a telehealth visit with Plaintiff on September 9, 2020 to evaluate her empty nose syndrome. (A.R. 1073.) Therein, Dr. Das stated that Plaintiff's "inferior turbinates have been previously reduced 50% leaving them abnormally small" and that she "has chronic suffocation and the inability to breath [sic] normally." (*Id.*)  Dr. Das further explained that "Empty Nose Syndrome sufferers may be constantly distracted due to the fact that they are not getting enough air" and that Plaintiff "feels constantly exhausted due to the lack of air flow and has trouble concentrating." (*Id.*)

As for Plaintiff's mental health, in July 2018, Plaintiff presented to Booker Behavioral Health for an initial assessment, citing stress and anxiety due to complications from her sinus surgery, separation from her spouse, and unemployment. (A.R. 667–84.) In September 2018, Plaintiff underwent psychiatric evaluation at Booker Behavioral Health. (A.R. 685–88.) Eric Alcera, M.D., noted that Plaintiff was "pleasant, cooperative, alert and oriented," although she "became tearful during the interview." (A.R. 687.) Dr. Alcera further found that Plaintiff's "thought process was linear and goal directed" and that Plaintiff's memory, concentration, and ability to think abstractly were grossly intact. (*Id.*) Dr. Alcera ultimately diagnosed Plaintiff with adjustment disorder, including anxiety and depressed mood. (*Id.*)

Treatment notes from the following months indicate similar assessments. In March 2019, Plaintiff was tearful and stated that her anxiety and depression made it difficult to function. (A.R. 691.) The attending physician, Christine Annibali, M.D., noted that Plaintiff's memory and concentration were grossly intact. (*Id.*) Dr. Annibali recommended continued therapy and

Wellbutrin for depressed mood and anxiety. (*Id.*) In May 2019, Plaintiff reported tolerating the Wellbutrin, although her sleep continued to be poor due to problems breathing and facial pain. (A.R. 693.) By December 2019, Plaintiff reported that her sleep had slightly improved with medication, but that she continued to be depressed because of the effects of her surgery. (A.R. 697.) On examination, Plaintiff was neatly groomed, cooperative, and attentive. (A.R. 698.)

In April 2020, during a telehealth appointment, Plaintiff reported difficulty adjusting to the COVID-19 pandemic, including exhaustion as a result of tending to her six-year-old daughter and her sinus condition. (A.R. 1031.) The attending medical resident noted that Plaintiff was oriented and cooperative, with normal thought processes, but "sounded dysthymic." (A.R. 1032.) Over the course of the proceeding telehealth visits with her psychiatric care provider, Plaintiff reported feeling "the same," and, on examination, was oriented, cooperative, and presented without notable abnormality. (A.R. 1056, 1066.)

In November 2020, Isabella Ramirez, M.D., provided an assessment of Plaintiff's mental health status in which she stated that Plaintiff had been in the care of her clinic since July 2018 and that Plaintiff was being treated for depressive and anxiety disorders, symptoms of which included "marked impairment with concentration, problem-solving and interpersonal functioning, per patient report." (A.R. 1079.) Specifically, Dr. Ramirez indicated that Plaintiff had "marked" limitations in terms of understanding, remembering, or applying information; interacting with others; concentrating or maintaining pace; and adapting or managing oneself. (A.R. 1076.)

In addition to the treatment notes and opinions of Plaintiff's own doctors, the record also includes assessment of Plaintiff's medical history by state agency medical consultants in connection with her disability and SSI applications. (A.R. 229–58.) Nawal Abdelmessieh, M.D. reviewed Plaintiff's medical history on initial consideration and found that, despite Plaintiff's self-

reported symptoms, the objective findings demonstrated normal physical exams, normal labs, and unremarkable x-ray and MRI imaging and that Plaintiff's impairments were, therefore, not severe. (A.R. 229.) Michael Plasay, Ph.D., also reviewed Plaintiff's medical history and concluded that, although Plaintiff had a mild impairment of her memory and ability to concentrate, her overall limitations were not severe. (A.R. 230–31.) Upon reconsideration of Plaintiff's applications, the state agency consultants largely affirmed the initial findings. (A.R. 254–56.) However, Steven Reed, M.D., reviewed Plaintiff's medical history and found that Plaintiff had a moderate mental impairment as to her attention, pace, and adaptiveness. (A.R. 258.) Still, according to Dr. Reed, "[i]n a work-like setting, [Plaintiff] would be able to perform tasks with adequate [concentration, persistence, and pace], relate adequately, and adapt to simple changes in routine." (*Id.*)

### B.   Testimonial Evidence

At the December 11, 2020 hearing, Plaintiff testified as to her medical issues and their effects on her ability to function. (A.R. 200–14.) Plaintiff first stated that she has a bachelor's degree in communication and that she had not worked since 2017. (A.R. 200.) Plaintiff also noted that she had been in a motor vehicle accident that year, for which she was receiving treatment. (*Id.*) Plaintiff's testimony then focused on the June 2018 nasal surgery and her ensuing nasal problems. According to Plaintiff, following the surgery, she immediately felt ill, explaining that she could not breathe or sleep properly and felt like she was "drowning." (A.R. 201.) Plaintiff stated that she was eventually diagnosed with empty nose syndrome. (*Id.*) Plaintiff explained that she has seen multiple psychiatrists to assist her in dealing with the effects of the disorder, adding that she is "in a state of panic all day every day." (A.R. 202.) Plaintiff testified that she "can't handle any kind of chemicals," has to "lay down most of the day," and rarely leaves her house as she constantly feels ill. (*Id.*) Plaintiff also stated that she could not engage in much self-care, only

showering once per week and getting only four to five hours of sleep per night. (A.R. 204–05.) Plaintiff further explained that her mother had become indispensable to her in assisting with basic household chores, particularly those involving any sort of chemicals, such as laundry. (A.R. 206–07.) In sum, Plaintiff testified that she felt like a "different person" since the surgery.

Following examination by the ALJ, Plaintiff responded to questioning by her attorney. (A.R. 209–14.) Plaintiff expanded upon the consequences of her empty nose syndrome, stating that she can only stand or walk for short periods of time and cannot lift anything beyond about seven pounds. (A.R. 211.) Plaintiff also explained that talking and interacting with other people proves difficult, as her inability to breathe properly also results in vocal cord dysfunction. (A.R. 212.) Finally, Plaintiff noted her inability to focus, emphasizing that her condition has made her feel "zombie-like." (A.R. 212–13.)

Vocational Expert ("VE"), Zach Fosberg, also testified at the hearing. (A.R. 214–22.) The VE first classified Plaintiff's past work as: (1) convention manager, which is a skilled position with a specific vocation preparation ("SVP") of 7 and is performed at a light exertion level and (2) project director, which is a skilled position with an SVP of 8 and is performed at a sedentary exertion level. (A.R. 281–19.) In discussing Plaintiff's basic abilities to perform representative occupations, the ALJ and VE assumed that Plaintiff's limitations precluded her past work. (A.R. 219.) The ALJ then proposed a hypothetical claimant who has no exertional limitations; must avoid concentrated respiratory irritants, unprotected heights, hazardous machinery, and extreme weather; can remember and understand simple instructions; can make simple work-related decisions; can adapt to routine stress; can have routine interpersonal contact with supervisors, coworkers, and the general public; and can perform work not requiring high-volume or fast-paced production quotas. (*Id.*) The VE testified that such a claimant could work in the following representative occupations:

(1) dining room attendant, which is an unskilled position with an SVP of 2 and is performed at the medium exertion level; (2) price marker, which is an unskilled position with an SVP of 2 and is performed at the light exertion level; and (3) inspector, which is an unskilled position with an SVP of 2 and is performed at the sedentary exertion level. (A.R. 219–20.) The VE further testified that the hypothetical claimant would still be able to perform such jobs with only occasional talking to other people. (A.R. 220.) However, the VE explained that all work would be precluded by an inability to sit, stand, or walk for eight hours or an inability to maintain concentration for routine, repetitive work. (*Id.*) In response to examination by Plaintiff's attorney, the VE testified that the need to bring air purifiers and humidifiers to a workstation would preclude all employment. (A.R. 222.)

### C.    ALJ Decision

On January 14, 2021, the ALJ issued a written decision analyzing whether Plaintiff satisfied her burden to demonstrate a disability using the standard five-step process. (A.R. 71–94.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability. (A.R. 76.) At step two, the ALJ found that the Plaintiff had the following severe impairments: empty nose syndrome; adjustment disorder with anxiety and depressed mood; major depressive disorder; and maxillary sinus disease. (*Id.*) The ALJ also noted several other alleged impairments, including cervical and lumbar degenerative disc disease, trigeminal neuralgia, complex regional pain syndrome, and fibromyalgia, which he deemed non-severe, as each only minimally affects Plaintiff's ability to perform basic work. (A.R. 77–78.)

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the relevant C.F.R. (A.R. 79.) In so deciding, the ALJ noted that he "reviewed

each of the Listings under the section 3.00 for Respiratory disorders," but "the testing results and objective evidence available within the record did not include sufficient evidence to support that [Plaintiff] met any of the Listings." (*Id.*) The ALJ also considered Plaintiff's mental health impairments under 12.04 and 12.06, finding neither the "paragraph B" or "paragraph C" criteria satisfied. (A.R. 79–81.)

The ALJ then determined that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work, but noted the following non-exertional limitations:

> [S]he should avoid concentrated exposure to respiratory irritants. She should avoid working at unprotected heights and with hazardous machinery. She should avoid weather extremes of heat, cold, wetness and humidity. She can remember, understand and carry out simple instructions. She can make simple work-related decisions. She can adapt to routine stress in the work-place. She can have routine interpersonal contact with supervisors, coworkers, and the general public. She can perform a job not requiring high volume or fast paced assembly line production quotas.

(A.R. 81.)

At step four, concurring with the testimony of the VE, the ALJ found that Plaintiff is unable to perform her past work as a convention manager and project director. (A.R. 87.) At step five, however, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (A.R. 88.) Specifically, consistent with the VE's testimony, the ALJ found that Plaintiff is able to perform the requirements of representative occupations such as dining room attendant, price marker, and inspector. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act (the "Act"), from June 1, 2018 through the date of decision. (A.R. 89.)

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations and citations omitted). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id*. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id*. § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See id*. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. *Id*. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." *Id*. § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id*. § 404.1522(b)(1). A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

If the impairment is found to be severe, the ALJ then determines, at step three, whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App.

1 (the "Impairment List").  *Id*. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.  *See id*. § 404.1520(d); *see also Bowen*, 482 U.S. at 146–47 n.5.  If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  *See id*. § 404.1526(a).  If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  *Id*.  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  *Williams*, 970 F.2d at 1186.  If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work.  20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.

If the claimant can perform past relevant work, the claimant is determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  *Plummer*, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  *Bowen*, 482 U.S. at 146–47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant can perform work and is not disabled.  *Id*.

III.   **PLAINTIFF'S CLAIMS ON APPEAL**

Plaintiff appeals the denial of her Title II and SSI applications, asserting three arguments: (i) the ALJ's RFC determination is not supported by substantial evidence; (ii) the ALJ's rejection of certain medical opinion evidence is unsupported; and (iii) the Commissioner's refusal to consider additional medical evidence submitted to the Appeals Council after the ALJ issued his decision was improper and warrants remand. (*See* Pl.'s Opening Br. at 12, ECF No. 10.) The Court addresses each basis for appeal in turn.

A.   **The ALJ's RFC Determination**

1.   Lack of Exertional and Manipulative Limitations

Plaintiff first argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ did not properly account for Plaintiff's empty nose syndrome, among other impairments, and should have included exertional and manipulative limitations in the RFC. (*See* Pl.'s Opening Br. at 15–19).

"[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a). "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before him[,]" and, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). When assessing a claimant's RFC, an ALJ must consider all of the claimant's medically determinable impairments which are supported by the record, including those considered non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). "Where the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts]

would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

Here, the ALJ determined that Plaintiff could perform a full range of work with certain non-exertional limitations to account for her empty nose syndrome and psychiatric issues. (A.R. 81.) Accounting for Plaintiff's empty nose syndrome, the ALJ stated that Plaintiff should "avoid concentrated exposure to respiratory irritants"; "avoid working at unprotected heights and with hazardous machinery"; and "avoid weather extremes of heat, cold, wetness and humidity." (*Id.*) The ALJ also provided the following guidelines in response to Plaintiff's mental health history: Plaintiff "can remember, understand and carry out simple instructions"; "can make simple work-related decisions"; "can adapt to routine stress in the work-place"; "can have routine interpersonal contact with supervisors, coworkers, and the general public"; and "can perform a job not requiring high volume or fast paced assembly line production quotas." (*Id.*)

Plaintiff contests this assessment, first arguing that the ALJ's conclusion that Plaintiff is capable of a full range of work without exertional limitations is "not reasonable or consistent with any reasonable view of the evidence of record." (*See* Pl. Opening Br. at 16.) But the ALJ's conclusion follows a detailed recounting of Plaintiff's medical history, including Plaintiff's own allegations, treatment notes from her physicians, and test results. (A.R. 81–85.) The ALJ specifically acknowledges that Plaintiff's "sinus issues did result in limitations to her functioning," but ultimately found that "these limitations could be accounted for in the [RFC]," as Plaintiff "still maintained most of her daily activities despite her breathing issues." (A.R. 85.) The ALJ explained that the treatment records from Plaintiff's physicians "do not document severe physical limitations," however, based on her allegations and sinus condition, the ALJ "limited her to avoiding concentrated exposure to respiratory irritants as well as weather extremes." (A.R. 85.)

14

Although Plaintiff may disagree with this determination, beyond her own allegations, Plaintiff is unable to point to medical evidence indicating that the RFC should have included physical limitations due to her sinus condition. Moreover, as explained further below, the ALJ also provided sufficient reasons for rejecting the opinion of Dr. Das regarding any functional limitations attributable to Plaintiff's empty nose syndrome.

Next, Plaintiff argues that the ALJ failed to account for her joint pain and dexterity difficulties in formulating the RFC. (*See* Pl.'s Opening Br. at 16–17.) Plaintiff points to the notes of Dr. Patel, who recounts Plaintiff's complaints of joint pain in her hands and elsewhere and the possibility of fibromyalgia, and those of Dr. Toboku-Metzger, who also documents Plaintiff's complaints of joint pain. (A.R. 481–520, 593–640.) Plaintiff further highlights her acupuncture treatment and therapy for such pain, particularly in her hands. (A.R. 704–1011.) But, as Plaintiff appears to concede, the treatment notes to which she refers document Plaintiff's own complaints about her joint pain, not a medical diagnosis. In fact, Dr. Patel, Plaintiff's rheumatologist, found no significant abnormalities upon physical examination of Plaintiff. (A.R. 486.) And, following x-rays and blood work, Dr. Patel concluded that Plaintiff demonstrated "[n]o current evidence for underlying inflammatory arthropathy/connective tissue disease." (A.R. 494.) Plaintiff's subjective reports of joint pain are insufficient to establish an impairment-related limitation. *See* 20 C.F.R. § 404.1529(b). Notably, Plaintiff does not identify any specific functional limitations related to dexterity that she believes the ALJ failed to include. Additionally, while the record does include diagnoses of mild degenerative disc disease and fibromyalgia, the ALJ reasonably concluded that the conditions were not severe as there was no evidence demonstrating that the conditions significantly limited Plaintiff' ability to perform basic work activities. (A.R. 77–79); *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (explaining that "diagnoses alone are

insufficient to establish their severity at Step Two," rather, a claimant is "required to present evidence that these limitations *significantly* limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working"). Nor does Plaintiff argue to the contrary on appeal. The medical record evidence that was before the ALJ, therefore, supports the ALJ's RFC determination.

2. The ALJ's Rejection of Certain Medical Opinion Evidence

Further challenging the ALJ's RFC determination, Plaintiff argues that the ALJ improperly rejected the medical opinions of certain of Plaintiff's treating physicians and, as a result, failed to account for Plaintiff's physical and psychological limitations. (*See* Pl.'s Opening Br. at 17–19.)

For claims that post-date 20 C.F.R. § 404.1520c, "an ALJ will not 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), [ ] including those from [the claimant's own] medical sources.'" *W.P. v. Comm'r of Soc. Sec.*, No. 21-2940, 2022 WL 2341561, at *1 (D.N.J. June 29, 2022) (quoting 20 C.F.R. § 404.1520c(a)). Rather, the ALJ must "evaluate the persuasiveness of medical opinions and prior administrative medical findings" using the factors set forth in 20 C.F.R. § 404.1520c(c). 20 C.F.R. § 404.1520c(a). The most important of these factors are "supportability," which refers to whether the objective medical evidence supports the relevant medical opinion, and "consistency," which refers to whether the opinion is consistent with evidence from other medical sources. *See id.*

Here, the ALJ rejected as unpersuasive the medical opinions of Dr. Ramirez, regarding Plaintiff's psychological limitations, and Dr. Das, regarding Plaintiff's limitations due to empty nose syndrome. (A.R. 86–87.) In November 2020, Dr. Ramirez completed paperwork describing Plaintiff's psychological limitations, including a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (A.R. 1074–82.) Therein, Dr. Ramirez indicated that her clinic had

16

followed Plaintiff since July 2018, that Plaintiff had been diagnosed with depressive and anxiety disorders, and that she experienced marked impairment with concentration, problem-solving, and interpersonal functioning. (A.R. 1079.) The ALJ assessed Dr. Ramirez's opinion both in terms of supportability and consistency. (A.R. 87.) As to supportability, the ALJ explained that the limitations set forth by Dr. Ramirez were apparently based upon Plaintiff's own self-reporting, not objective psychological assessment. (*Id.*) In fact, Dr. Ramirez qualifies the limitations she notes with the phrase "per patient report." (A.R. 1075, 1079.) Notably, none of Dr. Ramirez's treatment notes were contained in the record before the ALJ. Therefore, there were no objective findings made by Dr. Ramirez in the record so as to support her limitation determination.[2] *See* 20 C.F.R. § 404.1520c(c)(1). As to the consistency of Dr. Ramirez's opinion, the ALJ found that, although the record indicated that Plaintiff suffered from some personal relationship issues that contributed to her depression and anxiety, her treatment records did not indicate any interpersonal issues or difficulties interacting with others. (A.R. 87.) Rather, Plaintiff's psychiatric records consistently indicated that, despite Plaintiff's depressed mood, she appeared alert, oriented, and cooperative; demonstrated normal thought processes; and that her memory and concentration were grossly intact. (A.R. 687, 691, 693, 698, 1056.) Still, even finding Dr. Ramirez's opinion unpersuasive, the ALJ incorporated Plaintiff's mental limitations in the RFC, finding she was restricted to, among other things, understanding and carrying out only simple instructions; making simple work-related decisions; and jobs that do not require high-volume or fast-paced quotas. (A.R. 81.) As such, the ALJ's rejection of Dr. Ramirez's opinion is supported by the record.

---

[2] Plaintiff highlights that she submitted additional evidence to the Appeals Council, following the ALJ's decision, that includes a narrative report from Dr. Ramirez, in which Dr. Ramirez specifically refutes the ALJ's conclusion that her assessment was merely based on Plaintiff's self-reporting. (*See* Pl. Opening Br. at 18; A.R. 33–53.) However, under 42 U.S.C. § 405(g), evidence that was not before the ALJ cannot serve as grounds to argue that the ALJ's decision was not supported by substantial evidence. *See Matthews*, 239 F.3d at 591–93. Plaintiff's request for remand based on evidence such as Dr. Ramirez's narrative report is addressed *infra*, pursuant to a different standard.

The ALJ's rejection of Dr. Das's statements is also supported by substantial evidence. In a September 15, 2020 letter, after having assessed Plaintiff via a telehealth visit, Dr. Das opined that Plaintiff's inferior turbinates were abnormally small as a result of her nasal surgery; that Plaintiff has chronic suffocation and the inability to breathe normally; that Plaintiff feels constantly exhausted due to lack of airflow and has trouble concentrating; that those with empty nose syndrome may be constantly distracted due to the fact they are not getting enough air; and that, for these reasons, it would be hard for Plaintiff to perform any position in the general economy. (A.R. 1073.) The ALJ assessed Dr. Das's opinion both in terms of supportability and consistency, finding it unpersuasive. Specifically, the ALJ found that the record did not show Plaintiff had difficulty concentrating as a result of her empty nose syndrome, as noted above. The ALJ also highlighted that Dr. Das's statement that individuals with empty nose syndrome may suffer concentration deficits was merely speculative as applied to the present case, as he did not perform any testing of Plaintiff's concentration abilities. (A.R. 86.) Notably, Dr. Das's opinion not only conflicts with the medical record evidence, but also with the assessment of the state agency medical consultants who found that, even despite mild to moderate psychological limitations, Plaintiff could perform tasks with adequate concentration, persistence, and pace in a work setting. (A.R. 258.) The ALJ, therefore, provided sufficient reasoning for rejecting Dr. Das's opinion.

In sum, the ALJ's RFC determination is supported by substantial evidence. The ALJ provided a detailed account of Plaintiff's medical history and set forth specific reasons for rejecting certain medical opinion evidence that was undermined by other aspects of the record. Plaintiff's objections to the RFC are based largely on her own account of her symptoms and two limited medical opinions. Such objections are insufficient for the Court to disturb the ALJ's RFC assessment. *See Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (stating that courts "are bound by

the ALJ's findings of fact if they are supported by substantial evidence in the record"). Plaintiff also challenges the ALJ's decision that she can engage in alternative work. However, because Plaintiff's challenge is based solely on the purported inaccuracy of the ALJ's RFC determination, that aspect of Plaintiff's appeal likewise fails.

### B.   The Additional Medical Evidence

In the alternative, Plaintiff highlights the additional medical evidence submitted to the Appeals Council following the ALJ's adverse decision, asserting that the evidence warrants remand and consideration by the Commissioner.[3] (*See* Pl.'s Opening Br. at 22.) Specifically, Plaintiff asserts that two pieces of evidence meet the applicable standard for remand: (i) treatment notes from Dr. Ramirez, including a letter stating that her assessment of Plaintiff's limitations is supported by observation as informed by her medical education and training, and (ii) lecture notes from Dr. Eugene Kerns, which detail the impact of empty nose syndrome. (*See id.* at 23–24.)

Under 42 U.S.C. § 405(g), "when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ," known as "Sentence Four review." *Matthews*, 239 F.3d at 593. "However, when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ," known as "Sentence Six review." *Id.* (citing *Keeton v. DHHS*, 21 F.3d 1064, 1067 (11th Cir. 1994); *Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir. 1985)). Evidence is "new" when the "evidence

---

[3] The additional evidence Plaintiff submitted to the Appeals Council includes: the transcript of a lecture given by Dr. Eugene Kerns on September 30, 2021, discussing empty nose syndrome (A.R. 20–32); Dr. Ramirez's treatment notes from February 3, 2021 to June 3, 2021 (A.R. 33–53); Dr. Toboku-Metzger's treatment notes from January 7, 2020 to March 4, 2021 (A.R. 54–65); and the treatment notes of Josef Shargorodsky, M.D., the doctor who performed Plaintiff's nasal surgery, from January 23, 2018 to July 20 , 2018 (A.R. 95–193).

[was] not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990); *see Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (stating that "new evidence" cannot be "merely cumulative of what is already in the record"). Evidence is "material" if it is "relevant and probative," and "would have changed the outcome" of the Commissioner's decision. *Szubak*, 745 F.2d at 833. Moreover, "[a]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.*

As Plaintiff correctly concedes, the majority of the additional evidence submitted to the Appeals Council does not meet the "new and material" standard necessary for remand, as it was available to Plaintiff during the administrative proceeding, and it fails to provide information that deviates from the record before the ALJ such that the outcome would have been altered by its consideration. (*See* Pl. Opening Br. at 22–23.) Instead, Plaintiff argues that only Dr. Ramirez's treatment notes and Dr. Kern's lecture notes are medical evidence that is new and material, and that there was good cause for not previously submitting the evidence to the ALJ. (*See id.* at 22–24.)

With respect to Dr. Ramirez's treatments notes, Plaintiff fails to demonstrate that the medical evidence meets the standard for remand. First, the treatment notes cover the period from February 3, 2021 to June 3, 2021 and, therefore, post-date the ALJ's decision—precluding a finding that the treatment notes are new or material. *See Szubak*, 745 F.2d at 833. Second, the contents of the treatment notes are largely consistent with the findings set forth in prior psychiatric records, indicating Plaintiff's normal thought processes, cooperative behavior, grossly intact memory, and adequate concentration, despite her depressed mood. (A.R. 37–38,

20

42–43, 46–47.) Plaintiff highlights that the treatment notes include a June 3, 2021 letter from Dr. Ramirez attesting to Plaintiff's condition and limitations. (A.R. 34–35.) But, again, the letter post-dates the ALJ's decision, and Plaintiff provides no reason as to why a similar letter could not have been produced as part of the record before the ALJ.

Dr. Kerns's lecture notes from September 30, 2021 are similarly neither new nor material under the relevant standard. Moreover, while Dr. Kerns's lecture provides insight into empty nose syndrome and its sufferers, the lecture does not constitute medical evidence for purposes of Plaintiff's disability application. Dr. Kerns is not one of Plaintiff's treating physicians, did not consult Plaintiff's medical records, and does not offer any opinion that bears directly on Plaintiff's condition. If anything, the lecture transcript is evidence that empty nose syndrome is a serious condition with unpleasant symptoms, a proposition which the Court does not doubt. However, for the stated reasons, the lecture transcript cannot support remand here. Thus, because the additional evidence Plaintiff submitted to the Appeals Council fails to meet the Sentence Six review standard, remand is unwarranted.

## IV.    **CONCLUSION**

For the reasons stated above, the decision of the ALJ is **AFFIRMED**. An appropriate Order will follow.


Date: **May 8, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

21